| | |
|---|---|
| **MILITARY LAW CENTER, INC.** | **LOKER LAW, APC** |
| Nicholas Barthel, Esq. (319105) | Matthew M. Loker, Esq. (279939) |
| nbarthel@militarylawcenter.com | matt@loker.law |
| 2173 Salk Ave., Ste. 250 | 1303 E. Grand Ave., Ste. 101 |
| Carlsbad, CA 92008 | Arroyo Grande, CA 93420 |
| Telephone: (760) 536-9038 | Telephone: (805) 994-0177 |
| Facsimile: (760) 536-9010 | Facsimile: (805) 994-0197 |

*Attorneys for Plaintiffs*,
Galen & Sheryl Gabel

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GALEN GABEL; AND, SHERYL GABEL,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.; AND, COINBASE GLOBAL, INC.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>I.  **THE ELECTRONIC FUND TRANSFERS ACT, 15 U.S.C. § 1693, ET SEQ.;**<br><br>II. **CONSUMER LEGAL REMEDIES ACT, CAL. CIVIL CODE § 1750 ET SEQ.**<br><br>III. **CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200;**<br><br>IV. **CALIFORNIA IDENTITY THEFT ACT, CAL. CIV. CODE §§1798.92 ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1. The stated purpose of the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq. ("EFTA"), is to "provide a basic framework establishing the rights, liability, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). EFTA's "primary objection…is the provision of individual consumer rights." *Id*. Moreover, the language of EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability. *Id*., at 1693d-l. EFTA's ambit extends to the regulation of any transactions initiated on a computer. 15 U.S.C. § 1693a(7).

2. Similarly, in enacting the California's Identity Theft Act, Cal. Civ. Code §§1798.92 *et seq*. ("CITA"), the California Legislature found that the right to privacy was being threatened by the indiscriminate collection, maintenance, and dissemination of personal information. Accordingly, CITA was enacted to combat the lack of effective laws and legal remedies in place. To protect the privacy of individuals, it is necessary that the maintenance and dissemination of personal information be subject to strict limits. Cal. Civ. Code §1798.1(a), (c).

3. GALEN GABEL ("Mr. Gabel") and SHERYL GABEL ("Mrs. Gabel") (collectively "Plaintiffs"), by Plaintiffs' attorneys, bring this action to challenge the actions of Defendant JPMORGAN CHASE BANK, N.A. ("Chase") and COINBASE GLOBAL, INC. ("Coinbase") (collectively "Defendants") with regard to Chase's refusal to acknowledge and remedy multiple unauthorized electronic funds transfers, as well as Coinbase's refusal to return the stolen funds that remain in its possession.

4. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiffs allege on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in California.

7. Any violations by Defendants were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of each Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of each Defendants named.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court arises pursuant to 15 U.S.C. § 1693; and 28 U.S.C. § 1367 for supplemental State claims.

10. This action arises out of Defendants' violations of (i) the Electronic Fund Transfers Act, 15 U.S.C. § 1693, *et seq*. ("EFTA"); (ii) Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*. ("CLRA"); (iii) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); and (iv) California Identity Theft Act, Cal. Civ. Code § 1798.82, et seq. ("CITA").

11. Because Defendants conduct business within the State of California, personal jurisdiction is established.

12. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) both Plaintiffs reside within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

13. Plaintiffs are elderly, natural persons who resides in the County of Riverside, State of California and are both a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

14. As explained in detail below, Plaintiffs are each a "Victim of Identity Theft" as that term is defined by Cal. Civ. Code § 1798.82(d).

15. Chase is a corporation and financial institution incorporated in the State of Ohio and is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

16. Coinbase is a corporation and financial institution incorporated in the State of Delaware.

17. As explained in detail below, Coinbase is a "claimant" as that term is defined by California Civil Code § 1798.92(a).

## FACTUAL ALLEGATIONS

18. At all times relevant, Plaintiffs are individuals residing within the State of California.

19. Plaintiffs had checking accounts (ending in 5964 and 6390) and saving accounts (ending in 1892 & 6509) ("Accounts") with Chase. Each of these Accounts constitute an "account" as defined by 15 U.S.C. § 1693a(2); and, 12 C.F.R. 1005.2(b)(1).

20. On Wednesday, December 19, 2018, Mrs. Gabel attempted to contact Amazon Customer Service to return a water filter that Ms. Gabel had previously purchased for $51.55. Mrs. Gabel searched on Google to find the phone number for Amazon Customer Service and called the number that Google provided. Unbeknownst to Mrs. Gabel, this number belonged to a group of hackers in India.

21. When Mrs. Gabel called the number, the receiving party answered the phone as "Amazon help desk." The individual stated that his name was "Sam". Once Mrs. Gabel explained that she was attempting to get a refund, he asked Mrs. Gabel for information relevant to the water filter invoice such as her name, address, invoice number, and her phone number.

22. After some time, "Sam," then claimed that he needed more information to confirm the purchase, and thus began asking Mrs. Gabel for more personal information such as her debit card's number, her social security number and routing number, but Mrs. Gabel refused to give this information because she did not think it was relevant and knew it was personally sensitive information.

23. After some more time waiting on the phone, "Sam" then asked Mrs. Gabel to check Mrs. Gabel's bank account on her home computer to see if the return had been credited to her account.

24. When Mrs. Gabel opened her Chase online banking, she noticed her cursor moving around the screen. Mrs. Gabel asked "Sam" if he was accessing her computer and he stated that he needed to do so to process the refund. At no time did Plaintiffs authorize "Sam" to utilize their computer remotely, nor did Plaintiffs ever authorize "Sam" to access their banking information through Chase's website. Similarly, at no time did Mrs. Gabel ever give "Sam" access to her computer, bank account, email account or any other device.

COMPLAINT

25. Without Mrs. Gabel noticing, "Sam" then transferred money from Plaintiffs' savings accounts ending in 6509 and 1892 to their general checking account ending in 5964. Once the money was in the checking account, without Plaintiffs' authorization, knowledge, or consent "Sam" sent two wire transfers, one transfer for $40,000 and one for $60,000, out to Coinbase.

26. The abovementioned transfers were unauthorized electronic fund transfers as defined by 15 U.S.C. § 1693a(12); and, 12 C.F.R. 1005.2(m).

27. At no time did Plaintiffs receive an email or text message from Chase notifying Plaintiffs that someone was initiating a wire transfer or requesting Plaintiffs to approve a transfer.

28. Once Mrs. Gabel noticed what had happened, she immediately began screaming and crying. At this time, she realized that "Sam" was no longer on the phone and that he had robbed her of $100,000.

29. Within seconds, Mrs. Gabel immediately contacted the Chase Private Client Phone Number on the back of her Visa card and asked to speak with the fraud division. Mrs. Gabel notified Chase's employee Edward that $100,000 had been stolen from the Accounts and that Plaintiffs needed to file a fraud report. Mrs. Gabel had to call back due to receiving another phone call. When Mrs. Gabel called back, she spoke with Chase's employee Sierra Lawson and submitted a report.

30. On the next day, December 20, 2018, Plaintiffs and their son Greg Gabel, went to Chase's Menifee Branch and closed their bank accounts and opened new ones with Chase employee Kenny Conway. Kenny assisted them with renaming their accounts and answered several questions regarding them filing a formal fraud report. During their conversations, they were shown that their $100,000 had been wire transferred to Coinbase, Inc. for the purchase of Crypto-currency.

Case # 5 of 17 Gabel, et al. v. Chase, et al.
COMPLAINT

31. Once Plaintiffs arrived back home, they contacted Coinbase and spoke to Coinbase employee Tyler Johnson. They were told that an account had been fraudulently set up under Mrs. Gabel's name. However, the Coinbase employee stated that he was unable to provide Plaintiffs with any information and that he would lock the account from any further activity.

32. This same day at approximately 1655 hours, Riverside County Sheriff's Deputy Pierce Roberts (Badge # 5121) arrived at Plaintiffs' home to take a police report. Deputy Roberts took detailed notes on the above-referenced situation and attempted to speak with Coinbase. However, Deputy Roberts was also met with similar resistance and notified that, despite the account being in Mrs. Gabel's name, Coinbase could not share any information about the account. The Police Report referenced is #SW183540042.

33. Mrs. Gabel contacted the Federal Trade Commission and filed a report due to the Identity Theft: Report# 103019644. Additionally, a report was filed with the FBI via IC3.com regarding the hacking and transfer of funds out of Plaintiffs' Accounts.

34. At no time during or after the $100,000 being transferred to Coinbase were Plaintiffs notified of the unauthorized and unusual activity.

35. Unbeknownst to Plaintiffs, but discovered after, the hackers had some how obtained remote access to Plaintiffs' computer. Once within the computer, the hackers changed the settings in Plaintiffs' Chase account and gmail so that the hackers received the any notices.

36. Similarly, these hackers somehow obtained the ability to utilize Mrs. Gabel's cellular phone's data. This was evidenced by the fact that there were suspicious calls to foreign countries that Plaintiffs did not make.

37. Upon information and believe, the hackers utilized this to intercept any communications that Chase attempted to send Plaintiffs regarding the wire transfers.

38. At no time did Plaintiffs receive actual notice of the transfer or any access codes from Chase to validate the transfer. Furthermore, Plaintiffs did not provide the hackers with any codes so that the hackers could verify the transfer.

39. On December 20, 2018, Plaintiffs received a letter from Chase's Fraud Department stating that, "[Chase is] concerned someone may be using your personal information. We are committed to protecting you, so we closed this account to prevent fraudulent usage and help protect your identity."

40. On December 24, 2018, Chase sent Plaintiffs a letter stating that it completed its investigation and is denying Plaintiffs' claims of fraud because, "you did not take ordinary care to prevent the fraud. We will not reimburse your account. This claim is now considered closed."

41. On February 13, 2019, Chase sent Plaintiffs a letter stating that it would be permanently crediting their account $245 for fraudulent charges used to purchased three items on Amazon.com on December 20, 2018 through Plaintiffs debit card ending in.

42. However, this debit card's information was obtained in the same hacking incident that initiated the wire transfer that Chase previously denied. Therefore, Chase was now saying that it is willing to refund the $245 as being fraud, but is unwilling to refund the $100,000 as fraud, despite them both arising from the exact same incident.

## PLAINTIFFS' DISPUTES WITH CHASE

43. Throughout 2019, Plaintiffs have continued to send letters to Chase to try and get to Chase to change its position. However, Chase repeatedly refuses to credit Plaintiffs for the $100,000 that Chase allowed hackers to wired out of Plaintiffs' account.

44. Furthermore, despite speaking with Chase on the phone seconds after the unlawful transfer and in person the day after the incident, Chase did not attempt to cancel the wire transfer or recall the wire until April 4, 2019, close to 4 months later.

45. On August 12, 2021, Plaintiffs again sent a letter to Chase seeking a refund for the funds that Chase transferred without authorization. Plaintiffs again explained the details of what happened. As of the filing of this complaint, Chase has not provided any response to Plaintiffs.

46. Chase did not make a good faith investigation of the unauthorized electronic fund transfers.

47. Chase did not have a reasonable basis for believing that Plaintiffs' account was not in error.

48. Chase knowingly and willfully concluded that Plaintiffs' Account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Chase at the time of its investigation; and more importantly, when Chase finds that other transaction through the same hacking were fraud.

49. Through this conduct, Chase violated 15 U.S.C. § 1693f.

50. Chase imposed liability on Plaintiffs for the entirety of the disputed transactions and fees of $100,000.

51. Through this conduct, Chase violated 15 U.S.C. § 1693g(a).

## PLAINTIFFS' DISPUTES WITH COINBASE

52. On December 20, 2018, Coinbase support sent Plaintiffs an email stating that they were looking into the unauthorized activity with a specialist.

53. On December 21, 2018, Coinbase informed Plaintiff via email that they cannot issue a refund but that they will make sure that no further charges are submitted to your account.

54. Upon information and belief, Plaintiffs have remaining funds within this Coinbase account. Although the hackers transformed some of the funds into bitcoin and wired it to their own wallets, not all of the funds were removed from the Coinbase account.

55. On August 16, 2021, Plaintiffs sent a comprehensive dispute letter detailing the above facts and demanding the remaining funds be returned to Plaintiffs. Plaintiffs also included copies of the December 2018 police report; internet crime complaint center referral form; previous emails with Coinbase; a photocopy of Mrs. Gabel's driver's license; and a photocopy of the bank's records showing the wire transfers going out of Plaintiffs' Accounts and into Coinbase.

56. Coinbase rejected this dispute and again stated that they would restrict any further activity on the account. However, Coinbase again did not provide Plaintiffs with a refund of the remaining moneys in the account. Instead, Coinbase explained that all money that all cryptocurrency transactions are irreversible and anonymous.

57. Through this conduct, Defendants harmed Plaintiffs by wholly depriving Plaintiffs of the full use, value and enjoyment of the chattels or monies described above.

58. Through this conduct, Defendants further caused Plaintiffs to suffer emotional distress.

59. The conduct of Defendants was a substantial factor in causing Plaintiffs this emotional distress and the harm described above in an amount to be proven at trial.

## CAUSES OF ACTION CLAIMED BY PLAINTIFFS

### COUNT I

### VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT

### 15 U.S.C. §§ 1693, ET SEQ. (EFTA)

### [AGAINST DEFENDANT CHASE]

60. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

61. Chase is a "financial institution" and Plaintiffs' Chase accounts were each an "account" under 15 U.S.C. § 1693a(2).

62. The foregoing acts and omissions constitute numerous and multiple violations of EFTA.

63. As a result of each and every violation of EFTA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

### COUNT II

### FOR VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT

### CALIFORNIA CIVIL CODE § 1750, *ET SEQ.*

### [AGAINST DEFENDANT CHASE]

64. Plaintiffs repeat, re-allege and incorporate herein by reference the above allegations as if fully stated herein.

65. California Civil Code Section 1750 *et seq.*, entitled the Consumers Legal Remedies Act (hereinafter "CLRA"), provides a list of "unfair or deceptive" practices in a transaction relating to the sale of "goods" or "services" to a "consumer." The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia*, that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

66. The service of securely holding Plaintiffs' money was purchased in California are "services" within the meaning of Civil Code § 1761(a).

67. Plaintiffs are "consumers" within the meaning of Civil Code § 1761(d).

68. Plaintiffs' procurement of a bank account is a "transaction" as defined pursuant to Civil Code Section 1761(e).

69. Civil Code Section 1770(a)(14) and (19) provide that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; (19) Inserting an unconscionable provision in the contract

70. Chase violated Civil Code Section 1770(a)(19) by including in pages 14 through 15, section 3, of the Bill Payment and Transfers & Other Services Agreement that consumers "assume all risks and loses if you disclose any sensitive information to a third party," even if that disclosure was done through "negligent handling of your User ID and Password."

71. However, this provision is unconscionable for it is attempting to constrict the consumer's ability to seek relief under EFTA. As the Consumer Finance Protection Bureau ("CFPB") has interpreted EFTA, "[n]egligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under [EFTA]." Interim Final Rule of Electronic Fund Transfers (Regulation E), 76 FR 81020, 81041 (Dec. 27, 2011). For example, a consumer "writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers." *Id*.

72. Even worse, Chase violated Civil Code Section 1770(a)(14) by citing this unconscionable contract language in its May 21, 2019 letter to Plaintiffs. In this letter Chase stated that it would not reimburse Plaintiffs for the $100,000 that Chase had wired out of Plaintiffs' account because Plaintiffs had contractually agreed to accept liability under these circumstances.

73. On information and belief, Chase's violations of the CLRA set forth herein were done with awareness of the fact that the conduct alleged was wrongful and was motivated solely for Chase's self-interest, monetary gain and increased profit. Plaintiffs further allege that Chase committed these acts knowing the harm that would result to Plaintiffs and Chase engaged in such unfair and deceptive conduct notwithstanding such knowledge.

74. Plaintiffs suffered an "injury in fact" because Chase continues to refuse to reimburse Plaintiffs for Chase's mishandling of their funds based on this unconscionable contract provision.

75. As a direct and proximate result of Chase's violations of the CLRA, Plaintiffs are entitled to a declaration that Chase violated the Consumer Legal Remedies Act.

76. Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

77. On or about October 27, 2021, Plaintiffs sent Chase a CLRA Demand Letter pursuant to Cal. Civ. Code § 1782.

78. Plaintiffs reserve the right to amend the Complaint to add damages.

## COUNT III

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

## CAL. BUS. & PROF. CODE § 17200, ET SEQ. (UCL)

## [AGAINST DEFENDANT CHASE]

79. Plaintiffs repeat, re-allege and incorporate herein by reference the above allegations as if fully stated herein.

80. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.

81. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.

82. A plaintiff is required to provide evidence of a causal connection between a Chase's business practices and the alleged harm--that is, evidence that the Chase's conduct caused or was likely to cause substantial injury.

83. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNLAWFUL

84. California Business & Professions Code §17200 prohibits any "unlawful ... business act or practice." An unlawful business act or practice is an act or practice that is both undertaken pursuant to business activity and also forbidden by law.

85. Any business act or practice that is unlawful, in the sense that it violates a specific statute, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made, may be enjoined under the UCL.

86. As discussed above, Chase has systematically and continuously violated EFTA and CLRA by refusing to refund Plaintiffs' accounts for the unauthorized transfer of funds that resulted from fraud and including an unconscionable provision in its contract.

87. Chase's unlawful business practices directly harmed Plaintiffs since Plaintiffs have suffered monetary damages due to said conduct.

88. Thus, Chase's conduct has violated the "unlawful" prong of California Business & Professions Code § 17200.

### UNFAIR

89. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."

90. Chase's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

91. There were reasonably available alternatives to further Chase's legitimate business interests, other than the conduct described herein.

92. Plaintiffs reserve the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

93. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

94. Here, Chase's conduct has caused and continues to cause substantial injury to Plaintiffs since Plaintiffs have suffered injury in fact due to Chase's unauthorized transfer of funds and refuse to refund for this unauthorized transfer.

95. Finally, the injury suffered by Plaintiffs are not an injury that these consumers could reasonably have avoided since Chase unilaterally transferred these funds with preauthorization.

96. As such, Chase failed in its role to safeguard Plaintiffs funds, and is now refusing to repay Plaintiffs after its mistake.

97. The injury suffered by Plaintiffs are not an injury which Plaintiffs could reasonably have avoided.

98. Thus, Chase's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### FRAUDULENT

99. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

100. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

101. Here, not only was Plaintiffs likely to be deceived, but Plaintiffs were deceived by Chase. Plaintiffs believed that Chase would hold their funds in a protective manner, but instead Chase transferred funds out of their accounts without Plaintiffs' authorization.

102. Thus, Chase's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

## COUNT IV

## VIOLATIONS OF CALIFORNIA'S IDENTITY THEFT ACT

## CAL. CIV. CODE § 1798.92-1798.97

## [AGAINST COINBASE]

103. Plaintiffs incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

104. The foregoing acts and omissions constitute numerous and multiple violations of the Cal. Civ. Code § 1798.92, including but not limited to each and every one of the above-cited provisions of Cal. Civ. Code § 1798.92.

105. As a result of each and every violation of Cal. Civ. Code § 1798.92, Plaintiffs are entitled to any actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5); a civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6); costs pursuant to Cal. Civ. Code § 1798.93(c)(5), attorney's fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5) and any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against each Defendant for:

- An award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1) for Plaintiffs;
- An award of statutory damages of no less than $100 nor greater than $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A) for Plaintiffs;
- An award of costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3);
- Injunction and an award of costs of litigation and reasonable attorneys' fees pursuant to Cal. Civ. Code § 1780;

- An injunction preliminarily and permanently enjoining Chase from engaging in the unlawful practices stated herein and improving its electronic transfer procedures;
- An order requiring Chase to pay restitution to Plaintiffs due to Chase's UCL violations, pursuant to Cal. Bus. & Prof. Code §§ 17200-17205 in the amount of owed to them under EFTA;
- An award of actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5);
- A civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6);
- Attorneys' fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5),
- Any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c);
- Exemplary and/or punitive damages for intentional misrepresentations pursuant to, *inter alia*, Cal. Civ. Code § 3294
- Treble damages under Civil Code Section 3345;
- Attorneys' fees under California Code of Civil Procedure § 1021.5;
- Any and all other relief the Court deems just and proper.

Dated: November 3, 2021                                Respectfully submitted,

                                        **LOKER LAW, APC**
                                    By: ___/s/ Matthew M. Loker___
                                        MATTHEW M. LOKER, ESQ.
                                        ATTORNEY FOR PLAINTIFFS

                                    **MILITARY LAW CENTER, APC**
                                    By: ___/s/ Nicholas Barthel___
                                        NICHOLAS R. BARTHEL, ESQ.
                                        ATTORNEY FOR PLAINTIFFS